evidence sufficiently establishes that the plaintiff was employed by the defendant Strobel to procure a loan of $22,000 at 5 per cent. on the property, and that the plaintiff procured a person able and willing to make the loan at the rate stated, of which Strobel was notified. If he were the sole defendant, a cause of action would have been established. Egan v. Kieferdorf, 16 Misc. Rep. 385, 38 N. Y. Supp. 81. But the liability charged is against Neusch as well as Strobel, and the justice found against both as upon a joint liability, and there cannot be an affirmance as to one and a reversal as to the other. Pollock v. Webster, 16 Hun, 104; Bradley v. Shafer, 64 Hun, at page 432, 19 N. Y. Supp. 640; Goodsell v. Telegraph Co., 109 N. Y. 147, 16 N. E. 324; National Board of Marine Underwriters v. National Bank, 146 N. Y. 64, 40 N. E. 500. It is a fundamental rule that judgments shall be secundum allegata et probata, and, as was said in Day v. Town of New Lots, 107 N. Y. 148, 13 N. E. 915: "Any departure from that rule is certain to produce surprise, confusion, and injustice." Romeyn v. Sickles, 108 N. Y., at page 652, 15 N. E. 698.

The only conversation had with Neusch was when he accompanied Strobel, at the latter's request, to the broker's office, and said he would not take a loan of less than $23,000. The plaintiff's principal declined to loan that amount, whereupon the transaction fell through. It does not appear that Neusch had any notice or knowledge that Strobel had employed the plaintiff to procure the loan, or that there was any broker in the transaction, and the mere fact that he said he would not take less than $23,000 does not imply the knowledge necessary to hold him. He certainly did not acquiesce in what had been done, and a ratification to charge him must have been with full knowledge of all the material facts. Munroe v. Judson, 82 Hun, 215, 31 N. Y. Supp. 299; Smith v. Tracy, 36 N. Y. at page 86.

The judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.

---

(17 Misc. Rep. 154.)

### McQUADE v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Term, First Department. May 25, 1896.)

1. STREET RAILROADS—INJURY TO PERSON CROSSING TRACK.
    In an action for injuries received while attempting to cross a street-car track, plaintiff testified that the street was clear as far as she could see, that she did not see any car coming, and the first thing she knew she was knocked down. The accident occurred about 9 o'clock, on a cold night, and some of the witnesses stated that plaintiff's head was covered to protect her from the weather. The gripman and the conductor stated that she was struck about the middle of the car, and plaintiff's testimony as to what portion of the car struck her was very indefinite. Held, that plaintiff did not show negligence on the part of defendant, or prove that she was free from contributory negligence.

2. SAME—DUTY TO EXERCISE CARE.
    Failure to sound gong as a car approaches a crossing does not relieve persons crossing the street from the exercise of proper care.

Appeal from Seventh district court.

Action by Annie McQuade against the Metropolitan Street Rail-
way Company for personal injuries.   There was a judgment in favor
of plaintiff, and defendant appeals.   Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

H. A. Robinson and J. T. Little, Jr., for appellant.

Joseph N. Folwell, for respondent.

McADAM, J.   The action is to recover for personal injuries
sustained by the plaintiff on January 4, 1896, while walking in an
easterly direction on the southerly cross walk at Lexington avenue
and Fifty-Second street, in this city.   She had crossed the westerly
track of the defendant's cable road, was struck by one of its cars go-
ing north on the easterly track, and thrown down upon her knees,
receiving the injuries of which she complains.

The plaintiff's testimony was to the effect that the street was per-
fectly clear as far as she could see, that she did not see any car
coming, and the first thing she knew she was struck and knocked
down.   The accident occurred at about 9 p. m.   It was a cold night,
and some of the witnesses swear that the plaintiff was carrying a
parcel, and that she was "bundled up"; meaning that her head was
covered to protect her from the weather,—a circumstance which
might have interfered with her sense of hearing.   According to the
testimony of the gripman and of the conductor, she struck about
the middle of the car.   The gripman positively testifies that the
platform of the car had passed her, and this is highly probable,
judging from the nature of her injuries and the fact that she fell
towards the westerly track.   So that, instead of the car running
into the plaintiff, she unconsciously ran into the car.   When inter-
rogated particularly as to what portion of the car struck her, she
testified, "The front of the car"; and, when asked what part of the
front, said, "I could not tell, because I was struck before I knew it."
The latter statement is undoubtedly the correct one.

This testimony fails to establish either negligence on the part of
the defendant, or freedom from fault on the part of the plaintiff.
The front of the car having passed her, it was the plaintiff's duty
to stop on the cross walk until the car passed.   The gripman had
the right to assume that she would exercise this care, because or-
dinary prudence commands it.   It is not an uncommon thing for a
pedestrian, seeing a car approach, to advance to the middle of the
street, and cross as soon as the car has passed.   Indeed, it is dif-
ficult, at times, to cross certain of our crowded thoroughfares in any
other way, owing to the presence of many passing vehicles in the
roadway.

The plaintiff's counsel lays stress upon the fact that his client did
not hear the gripman's gong.   There is no statute requiring the
ringing of a gong; yet, if the exercise of proper care in the manage-
ment of the car in a particular instance requires some warning to
be given, it is negligence not to give it.   Byrne v. Railroad Co., 104
N. Y. 362, 10 N. E. 539.   But the failure to sound the gong did not

relieve the plaintiff from the exercise of proper care in crossing the tracks. Krauss v. Railroad Co., 69 Hun, 482, 23 N. Y. Supp. 432; Cullen v. Canal Co., 113 N. Y. 667, 21 N. E. 716.

In Omslaer v. Traction Co., 168 Pa. St. at page 521, 32 Atl. 50, the court said:

"The rule, 'Stop, look, and listen,' before attempting to cross the tracks of a steam railroad, is inflexible, and nonobservance is negligence per se. So much of this rule as requires a person, about to cross the tracks of a steam railroad, to 'look and listen' to discover whether a train is approaching, is applicable to the crossing of a street railway operated by cable or electricity."

In answer to the plaintiff's claim that she looked and did not see the car approach, the language of the court in Burke v. Railroad Co., 73 Hun, at page 35, 25 N. Y. Supp. 1009, is significantly applicable, for it is there said:

"If a person looks, she is supposed to look for the purpose of seeing; and, if an object is in plain sight, and she apparently looks, but does not see it, it is manifest she does not do what she appears to do, and has not complied with the rules of law."

To the same effect, see Flanagan v. Railway, 163 Pa. St. at page 102, 29 Atl. 743.

In order to recover, the plaintiff was bound to prove affirmatively, not only that the injuries were caused by the negligence of the defendant, but that she did not in any manner contribute thereto. Mahon v. Burns, 13 Misc. Rep. 19, 34 N. Y. Supp. 91; Weston v. City of Troy, 139 N. Y. 282, 34 N. E. 780. She utterly failed to establish these essentials to a recovery, and for this reason the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.